IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ESB FINANCIAL Trustee of the Virginia
Briggs Revocable Trust,

    Plaintiff,

vs.                                  Case No. 07-1059-JTM

UNITED STATES OF AMERICA,

    Defendant.

MEMORANDUM AND ORDER

    This is an action addressing the validity of the government's disallowance of a charitable deduction sought by plaintiff, arising from a putative charitable donation extended by the decedent, Virginia Briggs. Both parties have submitted motions for summary judgment, based on stipulated facts.

    Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

    In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come

forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The parties have stipulated to the following facts. Citation references to attached exhibits have been omitted:

> 1. At all times relevant to this case and at her death, Virginia S. Biggs (herein referred to as "Virginia"), deceased, was a citizen of the United States and was a resident of Lyon County, Kansas.
>
> 2. On February 23, 1982, Virginia created the Virginia Sprague Biggs Revocable Trust (the "Original Trust").
>
> 3. On April 11, 2001, Virginia restated and amended the Original Trust as the Second Restated and Amended Virginia Sprague Biggs Revocable Trust U/I/D April 11, 2001 (herein referred to as the "Revocable Trust").
>
> 4. On January 22, 2002, Virginia amended the Revocable Trust.
>
> 5. Pursuant to Article IV, paragraph C, subparagraph 2 of the Revocable Trust, at the death of Virginia, the remaining portion of the Revocable Trust funded the Virginia S. Biggs Charitable Remainder Trust (herein referred to as the "Charitable Trust").
>
> 6. Under the provisions of Article VI, paragraph A, of the Revocable Trust, the Charitable Trust pays to Virginia's daughter, Virginia "Gina" Biggs (herein referred to as "Gina"), or Virginia's nephew Cyrus Carey if Gina should predecease Virginia, all of the net income of the Charitable Trust for their lifetimes. Gina and Cyrus Carey represent the only "Lifetime Beneficiaries" of the Charitable Trust.
>
> 7. Cyrus Carey died before Virginia.

8. Article VI, paragraph B, of the Revocable Trust provides that at the death of both of the Lifetime Beneficiaries, the remaining balance of the Charitable Trust will be distributed to a charitable organization to be determined by the Trustee.

9. Article VI, paragraph B, of the Revocable Trust defines "charitable organization" by reference to Sections 170(c)(2), 2055(a) and 2522(a) of the Internal Revenue Code of 1986 as from time to time amended (herein referred to as the "Code"). At all times relevant hereto, those cited Code sections define those charitable organizations eligible to receive donations which are deductible for estate tax purposes.

10. On January 26, 2002, Virginia died.

11. ESB Financial, as trustee of the Revocable Trust, is the executor (herein referred to as the "Executor") as defined in § 2203 of the Code.

12. Although Virginia's Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return (hereinafter "Form 706") originally was due within 9 months of her death, pursuant to § 6076(a) of the Code, the Internal Revenue Service (hereinafter "IRS") granted Virginia's Executor an extension to file the Form 706 until April 26, 2003.

13. On or about April 26, 2003, the Executor of her estate mailed the Form 706, claiming a charitable deduction of $328,316.00 representing the present value of the interest passing to the Charitable Trust. The Parties do not dispute the calculation of the charitable deduction. The IRS received the Form 706 on May 2, 2003.

14. On or about June 23, 2003, the IRS processed the payment included with the Form 706 in the amount of $160,310.00, representing estate tax in the amount of $150,426.00, a Failure to Pay Tax penalty in the amount of $4,512.78, and interest assessed in the amount of $4,076.31. On the same date, the IRS issued a refund to the Executor in the amount of $1,302.56 for the calculated overpayment.

15. On June 12, 2003, the IRS notified the Executor that it was opening an examination of the Form 706 regarding the claimed charitable deduction.

16. In its original and unmodified form, the Charitable Trust's governing provisions contained in Article VI, paragraph A, of the Revocable Trust, do not satisfy the requirements for a charitable remainder trust as described in § 2055 of the Code. Specifically, the Charitable Trust provisions do not meet the distribution requirements described in § 2055(e)(2) of the Code, and therefore do not meet the definition of a qualified charitable remainder unitrust described in § 664 of the Code.

17. On or about April 8, 2004, ESB Financial (formerly Emporia State Bank and Trust Company), as Trustee of the Charitable Trust filed a Petition For Order Approving Trust Modification (herein referred to as the "Petition") with the District Court of Lyon County, Kansas, to approve a trust modification to retroactively modify the terms of the Revocable Trust to conform with the requirements of § 2055 of the Code.

18. The Petition was not filed before the 90th day after the last date (including extensions) for filing the estate tax return.

19. The District Court of Lyon County, Kansas had jurisdiction over the Revocable Trust and was the proper venue for the trust modification.

20. On or about May 11, 2004, the District Court of Lyon County, Kansas, entered a Journal Entry of Judgment and Order Approving Trust Modification which modified the terms of the Revocable Trust to require payments and administration of the Charitable Trust in conformity with § 2055 of the Code from the date of death. The Journal Entry of Judgment and Order Approving Trust Modification set forth that the modifications "are hereby approved and shall become effective immediately."

21. The modifications ordered by the District Court of Lyon County, Kansas, to provisions of the Revocable Trust meet the definition of a charitable remainder unitrust as described in § 664 of the Code. This modification does not address § 2055(e)(3)(C)(iii) of the Code.

22. Although ESB Financial (formerly Emporia State Bank and Trust Company) obtained all relief it sought before the District Court of Lyon County, Kansas, on or about June 9, 2004, ESB filed a Notice of Appeal of the District Court's ruling.

23. On or about July 19, 2004, the IRS issued a 30-day letter to the Executor, denying the charitable deduction for the amount distributed to the Charitable Trust because the Charitable Trust's provisions did not satisfy the requirements of § 2055 of the Code. The 30-day letter specifies that the Revocable Trust was not reformed within the time limit of § 2055(e)(3)(C)(iii)(D of the Code.

24. On or about April 22, 2005, the Supreme Court of the State of Kansas filed its Opinion affirming the Order of the District Court to modify the terms of the Revocable Trust and concluding that "the changes approved by the district court are in accord with the settlor's intent and the provisions of K.S.A. 2004 Supp. 58a-412(a) and K.S.A. 2004 Supp. 58a-416."

25. On or about June 14, 2005, the IRS issued the estate a Notice of Deficiency. The Executor administratively appealed this deficiency within the IRS.

26. On August 15, 2005, the Executor paid the deficiency in advance in the amount of $147,151.00.

27. On or about August 29, 2005, pursuant to the Notice of Deficiency, the IRS assessed additional tax of $147,151.00 and additional assessed interest of $21,853.46.

28. On or about September 12, 2005, the IRS received a payment of the additional assessed interest in the amount of $21,853.46.

29. On or about February 16, 2006, the Executor timely filed a Form 843 Claim for Refund and Request for Abatement with the IRS to claim a refund in the amount of $187,259.46, representing claims for a refund of tax and interest paid by the estate as a result of the assessment issued by the IRS (see 127 above) in the amount of $169,004.46; and, a refund for tax, interest and penalties paid with Form 706 due to an additional deduction for legal fees associated with the examination of the estate tax return, in the amount of $16,044.00 in tax, $1,234.00 for a reduction in failure to pay penalty, and $977.00 for a reduction in interest.

30. On or about October 31, 2006, the IRS sent the Executor a Notice of Claim Disallowance.

31. On March 1, 2007, the Executor timely filed this refund suit.

32. On or about June 20, 2007, Executor sent a qualified offer, as defined in § 7430(c)(4) and (g) of the Code, to the U.S. Department of Justice. The Department of Justice rejected this offer by letter dated July 5, 2007.

**Conclusions of Law**

The plaintiff argues that the deduction should have been allowed because the trust was modified retroactively under Kansas law. It also seeks recovery for additional legal fees and expenses incurred in the administration of the estate.

The government argues that the original trust failed to comply with the requirement in Section 2055(e) to avoid "split-interest transfers" – transfers of property to a charitable beneficiary, where there is a simultaneous transfer of an unspecified or unfixed interest in the same property to a noncharitable beneficiary. *See Oetting v. United States*, 712 F.2d 358, 360 (8th Cir. 1983).

Under Section 2055(e)(3), an otherwise non-qualifying transfer may obtain the deduction by a qualifying reformation of the transfer. This "escape hatch" provides:

> **(e) Disallowance of deductions in certain cases.–**
>
> (1) No deduction shall be allowed under this section for a transfer to or for the use of an organization or trust described in section 508(d) or 4948(c)(4) subject to the conditions specified in such sections.
>
> (2) Where an interest in property (other than an interest described in section 170(f)(3)(B)) passes or has passed from the decedent to a person, or for a use, described in subsection (a), and an interest (other than an interest which is extinguished upon the decedent's death) in the same property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to a person, or for a use, not described in subsection (a), no deduction shall be allowed under this section for the interest which passes or has passed to the person, or for the use, described in subsection (a) unless–
>
> > (A) in the case of a remainder interest, such interest is in a trust which is a charitable remainder annuity trust or a charitable remainder unitrust (described in section 664) or a pooled income fund (described in section 642(c)(5)), or

(B) in the case of any other interest, such interest is in the form of a guaranteed annuity or is a fixed percentage distributed yearly of the fair market value of the property (to be determined yearly).

(3) **Reformations to comply with paragraph (2)**.--

(A) **In general**.--A deduction shall be allowed under subsection (a) in respect of any qualified reformation.

(B) **Qualified reformation**.--For purposes of this paragraph, the term "qualified reformation" means a change of a governing instrument by reformation, amendment, construction, or otherwise which changes a reformable interest into a qualified interest but only if–

(i) any difference between –

(I) the actuarial value (determined as of the date of the decedent's death) of the qualified interest, and

(II) the actuarial value (as so determined) of the reformable interest, does not exceed 5 percent of the actuarial value (as so determined) of the reformable interest,

(ii) in the case of –

(I) a charitable remainder interest, the nonremainder interest (before and after the qualified reformation) terminated at the same time, or

(II) any other interest, the reformable interest and the qualified interest are for the same period, and

(iii) such change is effective as of the date of the decedent's death.

A nonremainder interest (before reformation) for a term of years in excess of 20 years shall be treated as satisfying subclause (I) of clause (ii) if such interest (after reformation) is for a term of 20 years.

(C) **Reformable interest**. – For purposes of this paragraph –

(i) In general. – The term "reformable interest" means any interest for which a deduction would be allowable under subsection (a) at the time of the decedent's death but for paragraph (2).

(ii) Beneficiary's interest must be fixed. – The term "reformable interest" does not include any interest unless, before the remainder vests in possession, all payments to persons other than an organization described in subsection (a) are expressed either in specified dollar amounts or a fixed percentage of the fair market value of the property. For purposes of determining whether all such payments are expressed as a fixed

>> percentage of the fair market value of the property, section 664(d)(3) shall be taken into account.
>
> (iii) Special rule where timely commencement of reformation. – Clause (ii) shall not apply to any interest if a judicial proceeding is commenced to change such interest into a qualified interest not later than the 90th day after –
>
>> (I) if an estate tax return is required to be filed, the last date (including extensions) for filing such return, or
>>
>> (II) if no estate tax return is required to be filed, the last date (including extensions) for filing the income tax return for the 1st taxable year for which such a return is required to be filed by the trust.
>
> (iv) Special rule for will executed before January 1, 1979, etc. – In the case of any interest passing under a will executed before January 1, 1979, or under a trust created before such date, clause (ii) shall not apply.

The United States argues that the deduction is not allowable because the executor did not commence an action for reformation of the original instrument until nearly a year after the date for doing so ended. The United States argues that the time limitations under § 2055(e)(3)(C)(iii) should be strictly construed. Finally, the United States argues that the attempted reformation fails to qualify under subsubparagraph (iii) because the decisions of the Lyon County District Court and the Kansas Supreme Court were not retroactive.

Here, on reaching its conclusion, the Lyon County District Court stated "that the modifications of the terms of the Charitable Remainder Trust as set forth in Exhibit C attached hereto be and they are hereby approved and *shall become effective immediately*." (Emphasis added). The Kansas Supreme Court made no explicit ruling as to retroactivity, holding only: "We conclude that the changes approved by the district court are in accord with the settlor's intent and the provisions of K.S.A. 2004 Supp. 58a-412(a) and K.S.A. 2004 Supp. 58a-416, and the district court's judgment should be affirmed."

The plaintiff argues that the statute is unambiguous, and that accordingly the court should not consider the legislative history behind the statute. Alternatively, it contends that the government's interpretation "would effectively repeal § 2055(e)(3)(C)(ii) in all circumstances."

7

(Dkt. No. 14, at 4). The plaintiff contends that the language used by the Lyon County District Court arose solely from the requirements of Kansas civil procedure, namely under K.S.A. 60-262(a), so as to provide for immediate appealability by precluding any stay of the court's order.

A charitable trust falls within the general definition of a "reformable interest" under § 2055(e)(3)(C)(I), where it is not allowable under § 2055(e)(2) because it is a split interest, and does not fall within the exclusion for fixed interests under § 2055(e)(3)(C)(ii), the special exception for interests receiving only "specified dollar amounts or a fixed percentage of the fair market value of the property." Such a "reformable interest" – a *split* but *unfixed* interest as created in an original instrument – may be reformed into a "qualified reformation" under § 2055(e)(3)(B) only by operation of the operation of § 2055(e)(3)(C)(iii).

The grant here originally provided for "all of the net income" of the trust to be paid to the beneficiary of the life interest. Thus it falls with the general definition of a "reformable interest" under subsubparagraph (I) and is otherwise disallowable because it represents a split interest barred by § 2055(e)(2).

The grant does not fall within the exception for fixed interests under subsubparagraph (ii) because there is no fixed amount or percentage of fair market value given to the recipient. Here, there is no objective indication of any intent by the grantor to restrict the amount granted to life beneficiary to any given dollar amount or fixed percentage. Instead, as noted earlier, the beneficiary was assigned "all of the net income" of the trust. Furthermore, the parties have independently stipulated (¶ 16) that the original grant does not meet the definition of a § 664 qualified charitable remainder trust. The grant is allowable, if at all, under the terms of subsubparagraph (iii).

But the grant cannot fall within subsubparagraph (iii) because the reformation action was not timely commenced. The court finds that the statute is unambiguous, and precludes giving effect to the attempted, untimely reformation sought by plaintiff.

The court is convinced that the 90-day requirement is binding, and must be strictly construed. *See Estate of Hall v. Comm'r*, 93 T.C. 745, 758 (1989), *aff'd,* Case No. 90-2226, 1991 WL 158697,

at *10 (Aug. 19, 1991 6th Cir.); *Estate of Tamulis*, 2006 WL 2482915, at *9 (U.S. Tax Ct. Aug. 29, 2006) (timeliness elements "relate to the substance or essence of the statute," which thus requires "strict, not merely substantial, compliance"), *aff'd*, *Tamulis v. Com'r*, 509 F.3d 343 (7th Cir. No.v 29, 2007); Estate of Bevan v. Com'r, No 1989-256, 1989 WL 54204 (U.S. Tax Ct. May 25, 1989) (Section 2055(e)(3)"restricts the period within which reform may be commenced," and reformation is barred where "the executor [had] the opportunity to reform the split-interest trust, and he failed to do so within the allotted time").

Plaintiff has cited no contrary case decisions in support of its argument. It does rely, however, on IRS Technical Advice Memorandum ("TAM") 200224006. The court finds that this reliance is misplaced, however. First, such decisions have weak persuasive value at best. Under I.R.C. § 6110(k)(3), such private rulings are not to be cited as precedent. *See Hanover Bank v. Comm'r*, 369 U.S. 672, 686 (1962) ("the petitioners are not entitled to rely upon unpublished private rulings which were not issued specifically to them, [although] such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws"). Second, and more importantly, in the referenced decision, the IRS permitted reformation outside the scope of subsubparagaph (iii), based on a finding that the noncharitable remainder held a "reformable interest" because fixed dollar amounts were assigned in each of the two competing trust settlements. Here, no such fixed amount or percentage was assigned to the noncharitable interest.

The statute's requirement of a timely commenced judicial modification cannot "be deemed unimportant or unclear, and therefore the doctrine of substantial compliance cannot be used to excuse a failure to comply." *Tamulis v. Com'r*, 509 F.3d at 347.

In enacting the reformation safety valve, Congress sought to provide relief for erroneous split-interest contributions, but only "so long as there are adequate safeguards to avoid abuse." H.R. Rep. No. 98-432, pt. 2, at 1516 (1984), reprinted in 1984 U.S.C.C.A.N. 697, 1156. One of these

safeguards is the narrow time limit for reformations, created to prevent attempts at reformation "only when the defects are found upon audit by the Internal Revenue Service." *Id.*

Contrary to the argument advanced by plaintiff, this construction of the statute gives full effect to all of the provisions of the statute. The legislative history confirming this result may be noted, not as an attempt to alter the meaning of the statute, but simply to confirm the plain wording compelling this result. And the case falls squarely within the sort of matter which the 90-day limit sought to prevent: attempted judicial modication after the IRS has instituted audit proceedings of a split-interest charitable deduction.

The plaintiff's suggestion that this interpretation somehow eliminates any portion of the statute is without merit. It rests only on an inverted understanding of the operation of the statute, deeming the "reformable interest" to be the end product of the reformation process, rather than, as noted above, the starting point

The failure of the executor to obtain a retroactive modification of the grant is an independent basis for disallowing the deduction. Under § 2055(e)(3)(B)(iii) an interest becomes a "qualified reformation" entitled to deduction only if the modification "is effective as of the date of the decedent's death."

Kansas law specifically provides that courts have the power to modify a trust to conform to the settlor's intention. Retroactivity is optional. K.S.A. 2004 Supp. 58a-416 provides:

> To achieve the settlor's tax objectives, the court may modify the terms of a trust in a manner that is not contrary to the settlor's probable intention. The court *may* provide that the modification has retroactive effect.

(Emphasis added.)

Here, neither of the state court decisions imposes its findings retroactively. The Kansas Supreme Court merely affirmed the decision of the Lyon County District Court and stated the modifications imposed by Lyon County District Court "are in accord with the settlor's intent." In turn, the Lyon County District Court had held that "the modifications of the terms of the Charitable

Remainder Trust as set forth in Exhibit C attached hereto be and they are hereby approved and *shall become effective immediately*." (Emphasis added).

As noted earlier, the plaintiff argues that the language used by the Lyon County District Court arose solely from the requirements of Kansas civil procedure, namely under K.S.A. 60-262(a), so as to provide for immediate appealability by precluding any stay of the court's order. ESB Financial also contends that the there is "a retroactive effect" based upon the language of the modification approved. (Dkt. No. 14 at 17)

Neither argument is persuasive. The language in the Kansas Supreme Court's decision merely states that the result is deemed in accordance with the settlor's intent. But such a finding is merely one requirement of relief under K.S.A. 2004 Supp. 58a-416. Retroactivity under the statute is not automatic, and is nowhere evidenced in the Supreme Court's decision.

The plaintiff's suggestion that language in the decision of the state district court was predicated on concerns for avoiding a stay and therefore guaranteeing appealability appears to be a *post hoc* rationalization unconnected to the circumstances surrounding the litigation. The executor commenced the modification action in Lyon County District Court, and, having won, itself then appealed from that decision. There is no indication in the record of the involvement of any other party attempting, or potentially attempting, to stay the proceeding, and thereby delay the appeal.

In any event, the plaintiff's suggestion fails to fully explain the court's language. If the court intended both retroactivity and intended to avoid a hypothetical stay, it could have done so by stating that the modifications "were effective upon the date of the original settlement and remain in effect," or words to that effect. Its actual statement, that the modifications "shall *become* effective immediately" (emphasis added), reflects not merely silence on the issue of retroactively, but a contrary ruling: that the modifications arose only at the time of the court's order, on May 11, 2004.

The plaintiff also suggests, pursuant to *Comm'r v. Estate of Bosch*, 387 U.S. 456 (1967), that the IRS is bound by the decision of the Kansas Supreme Court as to the reformation of the donor's intent. Even assuming that the Kansas Supreme Court had in fact expressed an opinion on

11

retroactivity, nothing in *Bosch* supports the conclusion that the IRS would be bound by such a result. That is, such a decision could not effectively repeal a federal statute, here § 2055(e)(3)(C)(iii) and its limitations period for *commencing* judicial modification. Under the statute, it is the date which such modification is first begun that is controlling. And here there is no question but that the effort was begun outside the limits of the federal statute.

The court finds that the United States properly disallowed the charitable deduction in question. The court notes that the United States has agreed that the Briggs Estate may recover attorney fees for legal fees advanced in connection with the proceedings, but has reserved passing on any specific figure in connection with the present litigation.

IT IS ACCORDINGLY ORDERED this 22nd day of September, 2008, that the Motion for Summary Judgment of the plaintiff (Dkt. No. 8) is denied as to the application of § 2055, and granted as to the request for attorney fees and expenses, although the court reserves ruling on any specific award until further motion by plaintiff; the Motion for Summary Judgment of the United States (Dkt. No. 10) is granted.

                                                               s/ J. Thomas Marten
                                                               J. THOMAS MARTEN, JUDGE